## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Crim. No. 22-CR-80 (DWF/DTS) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Kendarrius Keshaun Willard (2), | |
| Defendant. | |

## INTRODUCTION

Defendant Kendarrius Keshaun Willard is charged with conspiracy to make false statements in the purchase of a firearm, three counts of aiding and abetting false statements made during the purchase of a firearm, and being a felon in possession of a firearm under 18 U.S.C. §§ 922(a)(6), 924(a)(2), 922(g)(1). Willard moves to suppress the evidence obtained from the execution of a warrant authorizing the search of his apartment, including the Apple iPhone 13 seized during that search. He argues the warrant lacked probable cause because there was no nexus between the suspected criminal activity and the apartment searched. He also argues the iPhone 13 was improperly seized during the search of his apartment because the warrant to search the apartment did not specifically authorize that seizure. For the reasons discussed below, this Court recommends Willard's motions to suppress be denied.

**FINDINGS OF FACT**

**I.     The Warrants**

    **A.     Background**

Law enforcement began investigating Willard in early November 2021 for illegally possessing and possibly distributing illegal firearms. Gov't Ex. 1, Weinzettel Aff. at 2. During their investigation, officers observed that Willard had posted on social media various images of himself with multiple firearms. *Id.* at 3. Willard was prohibited from possessing firearms and ammunition due to a prior felony conviction for armed robbery. *Id.* at 2.

On November 6, 2021, officers observed Willard speeding on I-94 and making multiple unsignaled lane changes while driving a Toyota Avalon registered to co-defendant Ana Novacheck. *Id.* (The Avalon had also been seen parked directly in front of 6941 Meadowbrook Boulevard in Saint Louis Park, which is the address listed on Willard's drivers' license. *Id.* Gov't Ex. 3, 7.) State patrol attempted to stop Willard, but he fled, and a high-speed chase ensued. *Id.* During the chase, Willard crashed the car and fled the scene on foot. *Id.* A passenger in the car also attempted to flee but was apprehended. *Id.* The passenger also was later identified as a felon prohibited from possessing firearms. *Id.* Willard was arrested, and the car was subsequently searched. Police removed a Glock 10mm handgun, two Taurus 9mm handguns, ten rounds of 9mm ammunition, two rounds of .223 ammunition, and an Apple iPhone owned by Willard from the Avalon. *Id.* A warrant to search this iPhone was obtained on December 27, 2021. Gov't Ex. 2. The searches of the car and of the phone found in it are not the subject of Willard's motions to suppress.

Willard was released on bond from the Hennepin County Jail on November 10, 2021. *Id.* Both before and after Willard's initial arrest, law enforcement believed Willard was utilizing a black 2019 Dodge Journey, which they had also seen parked directly in front of the Meadowbrook Boulevard address. *Id.* at 3-4, 7. After Willard was released, officers saw social media posts by Willard showing him with a .223 APF semi-automatic rifle. *Id.* In his affidavit supporting the apartment warrant at issue here, Sergeant Weinzettel testified that, based on his training and experience, finding the .223 ammunition in the search of the Avalon without finding the rifle itself suggested Willard was in possession of the APF .223 rifle that he frequently posted on his social media.

On January 5, 2022, officers responded to a burglary on Margaret Street in Saint Paul, where a victim reported that a rifle, a scope, and several thousand dollars' worth of silver bars and trading cards were stolen. *Id.* at 4. The burglar also shot and killed the victim's dog using a 10mm handgun. *Id.;* Gov't Ex. 3 at 3. Home surveillance footage showed the person had identifying characteristics that matched those of co-defendant Ladarius Jaleel Snipes. *Id.* A fingerprint matching Snipes' was also recovered from the shovel used to break a window and gain access to the residence. Gov't Ex. 1 at 6. Officers obtained a warrant for Snipes' Facebook data which revealed that on January 5, 2022, Snipes' Facebook account was accessed approximately 1.5 blocks from the scene of the burglary on Margaret Street, about an hour prior to the break in. *Id.* Snipes' Facebook location data also confirmed Snipes' account was accessed in the area near Willard's apartment less than two hours following the Margaret Street burglary. *Id.* at 6-7. Snipes was charged in Ramsey County with offenses related to the burglary. Gov't Ex. 2 at 4-6.

3

Investigators then conducted public searches on Facebook and located separate accounts that appeared to belong to Snipes and Willard. Gov't Ex. 1 at 6-7. The Facebook pages showed that these two accounts had several public communications with each other, including on December 31, 2021, in which the Willard account posted a video "tagging" the Snipes account. *Id.* at 6. On January 7, 2022, agents obtained a warrant to search Snipes' Facebook account, which revealed 414-865-7085 as the phone number associated with Snipes' Facebook account. *Id.* The call log on Willard's phone, which had been seized from the Avalon involved in the high-speed chase, revealed that same number was one of Willard's top callers. *Id.* This information confirmed Willard and Snipes maintained contact with each other. *Id.*

### B.  The Apartment and iPhone Warrants

Based on the above information, Sergeant Weinzettel applied for a warrant to search apartment #241 at 6941 Meadowbrook Boulevard, believing it was "likely that evidence of the burglary" would be found there, including "the stolen AR15 style rifle, silver bars, and valuable trading cards[.]" *Id.* at 7. A Hennepin County judge found probable cause and issued the warrant on January 12, 2022, authorizing the search of apartment #241 and the black Dodge Journey Willard was believed to drive. Gov't Ex. 1 at 1. The apartment warrant authorized a search for and seizure of firearms, ammunition, firearms indicia, photographs depicting the possession of firearms, any currency or receipts relating to possession of controlled substances or firearms, controlled substances, sports trading cards, silver coins and bars, as well as clothing matching the outfit worn by the Margaret Street burglar. Gov't Ex. 1 at 1.

Officers executed the warrant on January 13, 2022, and found various gun and ammunition related items, as well as three cellular phones, including the iPhone 13 that is the subject of Willard's motion to suppress. Gov't Ex. 1, Receipt, Inventory and Return. On January 14, 2022, Sergeant Weinzettel obtained a warrant to search the three phones found at the apartment. Gov't Ex. 3. In his affidavit submitted in support of the cell phone warrant, Weinzettel stated that, during the apartment search, he spoke with co-defendant Novacheck. *Id.* at 3. Weinzettel testified that Novacheck told him she had bought three firearms for Willard, including a 10mm handgun which she reported stolen on the day of the burglary at Willard's request. *Id.* at 3. Specifically, Weinzettel testified Novacheck stated Willard had texted her a photograph of the 10mm handgun's serial number to make the stolen firearm report. *Id.* Novacheck also told Weinzettel that all three phones found during the execution of the apartment search warrant belonged to her, including the iPhone 13. *Id.* at 4.

On January 18, 2022, law enforcement obtained a search warrant for cell phone location data from T-Mobile associated with the phone number believed to be used by Willard around the time of the burglary.[1] Gov't Ex. 4. The affidavit in support of the cell data search warrant asserted this number was believed to be Willard's because Novacheck provided it to officers during the execution of the apartment search warrant. *Id.* The affiant also testified that Novacheck stated to officers that she was aware that

---

[1] It is unclear from the record whether this phone number was associated with Willard's iPhone seized from the Avalon Willard was driving in the high-speed chase, or was associated with any of the three phones seized during the execution of the apartment warrant, which Novacheck claimed all belonged to her. Because neither party raised an issue regarding which device was associated with this number (cell phone location data is gathered associated with a phone number, rather than a particular device; *see, e.g.*, *United States v. Peacock*, 256 F. App'x 9 (8th Cir. 2007)), this Court will not address that issue further.

Willard and Snipes burglarized homes together, and said she thought Willard might have driven Snipes on January 5 to and/or from the scene of the burglary on Margaret Street. *Id.*

**CONCLUSIONS OF LAW**

**I.     The Apartment Warrant**

Willard first argues that the warrant authorizing the search of the Meadowbrook Boulevard apartment lacked probable cause because the search warrant affidavit did not establish a nexus between evidence of the burglary and Willard's specific apartment. The Fourth Amendment commands that "no Warrant shall issue, but upon probable cause . . . particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV. To satisfy probable cause, "there must be evidence of a nexus between the contraband and the place to be searched . . . ." *United States v. Tellez*, 217 F.3d 547, 549-50 (8th Cir. 2000). The particularity requirement prevents general searches, a very real problem for colonists living under British rule, by "limiting the authorization to search to the specific areas and things for which there is probable cause to search . . . ." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).

Contrary to Willard's argument, however, a nexus existed between the burglary and Willard's Meadowbrook Boulevard apartment. "Probable cause exists if the warrant application and affidavit describe circumstances showing a fair probability that contraband or evidence of a crime will be found in a particular place . . . ." *United States v. Montes-Medina*, 570 F.3d 1052, 1059 (8th Cir. 2009). The nexus required as part of this probable cause analysis is "between the contraband being sought and the place to

6

be searched[,]" not the suspect. *United States v. Keele*, 589 F.3d 940, 943 (8th Cir. 2009) (quoting *Tellez*, 217 F.3d at 550).

A judge issuing a search warrant may consider both the supporting affidavit and "draw reasonable inferences from the totality of the circumstances" to determine whether probable cause exists. *Id.* at 944 (quoting *United States v. Alexander*, 574 F.3d 484, 490 (8th Cir. 2009); *see also United States v. Brackett*, 846 F.3d 987, 992 (8th Cir. 2017) (stating that "law enforcement officers may make reasonable inferences in preparing affidavits in support of a warrant"). Whether probable cause to issue a search warrant has been established is determined by considering the totality of the circumstances. *See, e.g., United States v. Mutschelknaus*, 592 F.3d 826, 828 (8th Cir. 2010).

Willard was linked to illegal possession of firearms during the pre-warrant investigation through his social media posts, which depicted Willard posing with firearms. Further, officers discovered three handguns and multiple rounds of ammunition in the Toyota Avalon Willard had driven during the high-speed chase on November 6, 2021. The pre-warrant investigation also showed that Willard and Defendant Snipes communicated with each other regularly, evidenced by the call log on Willard's phone. Moreover, Facebook data revealed Snipes was near the scene of the burglary before it occurred and was near Willard's known residence shortly after. Accordingly, a sufficient nexus existed between the burglary and Willard's apartment. The totality of the circumstances establish probable cause to suspect evidence related to the Margaret Street burglary would be found at Willard's apartment.

Willard further argues that the affidavit supporting the apartment search warrant was insufficiently particularized because the affiant did not adequately connect Willard to the specific unit within the apartment complex. This argument is without merit. The affidavit provided the correct and complete street address, 6941 Meadowbrook Boulevard Apartment #241, Saint Louis Park, MN 55426, and noted it was the residential address listed on Willard's drivers' license. *See United States v. Dancy*, 947 F.2d 1232, 1234 (8th Cir. 1991) ("A correct street address in a search warrant, even if no other description is given, is particular enough to withstand constitutional scrutiny."). Further, the affidavit noted that the investigation revealed cars Willard had been observed driving being parked at the Meadowbrook Boulevard complex. These facts connect Willard to 6941 Meadowbrook Boulevard, Apartment #241. Accordingly, the apartment warrant was supported by adequate probable cause.

Additionally, even if the apartment warrant had not been supported by adequate probable cause, the apartment warrant was a facially valid search warrant and the officers' reliance on it was objectively reasonable. Therefore, *Leon's* good faith exception would apply to prevent the exclusion of evidence seized during the execution of the apartment warrant. *See Perry*, 531 F.3d at 665.

## II.   The Apple iPhone 13 Seizure and Subsequent Search

Willard argues that any evidence seized from the iPhone 13 found during the apartment search must be suppressed as fruit of the poison tree. It is unclear that Willard has standing to move to suppress evidence gathered from the phone, as it was allegedly owned by Novacheck. However, because the Government has conceded the

8

issue by opting not to argue it, the Court assumes, without deciding, that Willard has the requisite standing.

First, to the extent Willard argues that all evidence obtained in the apartment search must be suppressed because the apartment warrant lacked probable cause, that argument fails for the reasons discussed above.

Willard also argues that, because the apartment warrant did not specifically authorize the seizure of any cell phones, the seizure of the iPhone13 was unlawful. But the apartment warrant authorized seizure of photographs depicting possession of firearms, as well as indicia of firearms. It is common knowledge that cell phones are used to both take and post pictures shared to social media accounts. Thus, the warrant covering photographs of and indicia of firearms, combined with the officers' knowledge of photos of Willard with firearms posted to social media, authorized the seizure of all three phones discovered during the execution of the apartment warrant.

Moreover, additional probable cause to temporarily seize the phones developed during the execution of the apartment warrant. During the search, Novacheck told officers that the three cell phones were hers and that on January 5, 2022, Willard had texted her a photograph of a 10mm firearm's serial number so she could report the firearm stolen. Willard's text message to Novacheck falls within the "indicia of firearms" authorization. Because the phones could contain this text message and photographs, the officers had probable cause to temporarily seize the cell phones while a search warrant for the phones was obtained.

It is well established that officers may seize property while they wait for the issuance of a search warrant, provided the officers act in good faith and with probable

cause. *See Segura v. United States*, 468 U.S. 796, 798 (1984) ("[W]here officers, having probable cause, enter premises, and with probable cause, secure the premises from within to preserve the status quo while others, in good faith, are in the process of obtaining a warrant, they do not violate the Fourth Amendment's proscription against unreasonable seizures."); *see also, e.g.*, *United States v. Ruiz-Estrada*, 312 F.3d 398, 404 (8th Cir. 2002) (securing an apartment to prevent the destruction of suspected narcotics supply while awaiting search warrant for 19 hours comports with the Fourth Amendment); *United States v. Roby*, 122 F.3d 1120, 1125 (8th Cir. 1997) (citing *United States v. Kulcsar*, 586 F.2d 1283, 1287 (8th Cir. 1978)) ("The officers entered, but took no investigative steps; they merely preserved the space and checked to assure their own safety. There was full compliance with the mandate of the Fourth Amendment."); *United States v. Burrell*, 2006 WL 1715608, at *21 (D. Minn. June 19, 2006) ("[W]e find that the 'freezing,' or seizure, of Brown's residence, until the issuance of a Search Warrant, was reasonable."). Precedent permitting the temporary seizure of a person's residence to prevent destruction of evidence pending the issuance of a search warrant easily extends to securing a cell phone. *See United States v. Haynes*, 2020 WL 3420869, at *8 (D. Minn. Apr. 27, 2020), report and recommendation adopted, 2020 WL 3420675 (D. Minn. June 22, 2020).[2]

The officers had ample probable cause to seize the cell phones to prevent deletion of incriminating evidence while they obtained a warrant to search them.

---

[2] In *Riley v. California*, 573 U.S. 373, 388 (2014) (internal citations omitted), the United States Supreme Court noted that defendants, who were challenging the search of their cell phones incident to their arrests, "concede[d] that officers could have seized and secured their cell phones to prevent destruction of evidence while seeking a warrant. That is a sensible concession."

### III. The T-Mobile Cellular Number Search

Finally, Willard argues there was no probable cause to search T-Mobile cellular number 763-910-2104, which is the phone number that Novacheck identified as Willard's. This Court disagrees.

The affidavit submitted in support of the cell phone data search warrant contained the information regarding Willard's criminal history, documented relationship and communications with Snipes, and suspected involvement in the January burglary. In addition, the affidavit included the following information from the apartment search:

> On 01/13/2021, investigators served the search warrant at [6491] Meadowbrook Blvd apartment #241. SNIPES and WILLARD were not at the address at the time, however WILLARD's wife, hereinafter referred to as A.T.N. was. Investigators interviewed A.T.N. and she advised them SNIPES did come to her address with WILLARD shortly after the burglary. A.T.N. told investigators she knows WILLARD and SNIPES to burglarize addresses together, and she believed WILLARD possibly drove SNIPES to and/or from the scene of the burglary at [6491] Margaret St. A.T.N. provided investigators with WILLARD's phone number 763-910-2104 and stated this was the phone number WILLARD would have had around the time of the burglary.

Gov't Ex. 4, Bohlen Aff. at 5. The affidavit provided sufficient probable cause to believe that evidence of the burglary, including Willard's proximate location during and immediately after the burglary, would be found from collecting the cell site location data associated with the number alleged to be Willard's. Further, even if probable cause did not exist, the cell phone data search warrant was a facially valid warrant and the officers' reliance on it was objectively reasonable. Therefore, *Leon's* good faith exception would apply. *See Perry,* 531 F.3d at 665.

11

## RECOMMENDATION

For the reasons stated above, the Court RECOMMENDS THAT:

1. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure of a Residence [Dkt. No. 79] be DENIED.

2. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure of Cellular Telephones and Cellular Phone Records [Dkt. No. 81] be DENIED.

Dated: January 11, 2023                    s/David T. Schultz
                                            DAVID T. SCHULTZ
                                            U.S. Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).